## DEL A. SIATS, d.b.a. SIATS REFRIGERATED SERVICE, v. WESTERN UNION TELEGRAPH COMPANY.

88 N. W. (2d) 199.

February 14, 1958—No. 37,156.

*Bang, Nierengarten & Hoversten,* for appellant.
*Coursolle, Preus & Maag* and *John H. Waters,* for respondent.

MURPHY, JUSTICE.

This is an appeal from an order of the district court denying plaintiff's motion for judgment notwithstanding the verdict or for a new trial. The plaintiff sued to recover damages sustained by reason of an alleged breach of duty on the part of the defendant telegraph company in failing to deliver a message.

Sometime prior to November 18, 1955, Del A. Siats, a transportation broker of Austin, Minnesota, entered into a contract with the Farmers Produce Company of Willmar for the transportation of a truck-load of eggs which the produce company had sold to the A. & P. stores in New York. Siats agreed to transport the eggs to the A. & P. warehouse at Jersey City or New York before 3 p. m. of Wednesday, November 23, 1955, in time for Thanksgiving sales the following day. He employed one Ralph Slattum to do the driving for the shipment. Slattum started from Willmar with the consignment on Friday, November 18, 1955. On Sunday, November 20, the truck broke down about 12 miles from Donegal, Pennsylvania, on the Pennsylvania Turnpike. The truck was towed to a garage in Donegal where it arrived at about 6 p. m. on Sunday, November 20, too late to have any work done that day. Repairs were not finished until sometime around 5 p. m. Tuesday, November 22, 1955.

Slattum did not have with him enough money to pay for the repair bill and the Turnpike tolls as well as other expenses for the rest of the trip. Accordingly he determined to send a message to the plaintiff by telegraph requesting that the necessary funds be sent to him. At 1:24 p. m. on Tuesday, November 22, at the Donegal garage, he apparently wrote out the following message:

"Del Siats, Austin, Minnesota
"Broke down will deliver November 23rd A M. Wire Hundred Dol-

lars to Donegal Turnpike Service MT Pleasant Westmoreland County Penn."

This message was phoned in to the defendant's telegraph office at Stahlstown, Pennsylvania. It is not clear from the record whether Slattum or the garage owner made the call. An office copy of the telegram shows that the message taken down by the agent was the same as that intended by Slattum except that the name and address of the sendee appears as "DELSIAPS" and it was apparently sent to Boston, Massachusetts.

Sometime after the repairs were completed the telegraph company agent called Slattum and asked him for the box number of Del Siats. Slattum testified that he told the agent it was a fairly small city and "they would have no trouble finding him," and the agent did not ask any more information of him. Telegrams sent between the agents of the defendant company show that after this communication with Slattum, the defendant learned for the first time that they did not have plaintiff's correct name and defendant still had not obtained the correct address. Slattum waited for the money until 1 a. m., Wednesday, November 23, 1955, when he paid for the repairs in cash and left. Because he did not have enough money to pay Turnpike tolls, he was forced to leave the Turnpike and travel over side roads. Because he was required to take a longer route, Slattum failed to make delivery before the deadline at 3 p. m. Wednesday. The consignee would not accept the late delivery, and Slattum had to dispose of the eggs at a loss in Norfolk, Virginia. The plaintiff's alleged damages were $955.

The jury returned a verdict for the defendant. Subsequently, plaintiff moved for judgment notwithstanding the verdict or, in the alternative, for a new trial. It is from the order of the court denying that motion that plaintiff appeals to this court.

■ Since the plaintiff contends that the law of the State of Pennsylvania controls the issue of defendant's liability, it should be observed that on June 18, 1910, Congress amended the Interstate Commerce Act, 36 Stat. 539, 545, so as to place interstate telegraphic communication under the jurisdiction of the Interstate Commerce Commission. Such jurisdiction was transferred to the Federal Communications Commission with the enactment of the Communications Act of 1934, 47

USCA, § 151, et seq. Ever since Federal control was thus established, telegraph companies, as to interstate transactions, have been subject to a national and uniform rule of law. Notwithstanding Erie R. Co. v. Tompkins, 304 U. S. 64, 58 S. Ct. 817, 82 L. ed. 1188, interstate message transactions are still governed by Federal law to the exclusion of conflicting state law; and this means that they are governed not merely by the provisions of Federal statutes but by "Federal common law" as well. Kaufman v. Western Union Tel. Co. (5 Cir.) 224 F. (2d) 723; O'Brien v. Western Union Tel. Co. (1 Cir.) 113 F. (2d) 539; Western Union Tel. Co. v. Conway, 57 Ariz. 208, 112 P. (2d) 857; Western Union Tel. Co. v. Junker (Tex. Civ. App.) 153 S. W. (2d) 210.

The principal question presented to us in this case grows out of the alleged failure of the court to properly instruct the jury with reference to the question of liability of the defendant by reason of its alleged negligent conduct in failing to get the address correctly and to deliver the message. The defendant contends that the plaintiff was not entitled to an instruction on negligence because it claims that the complaint does not state an action in tort and merely alleges liability of the defendant on the basis of a breach of contract. An examination of the complaint discloses that this objection is clearly without merit. While the complaint does make reference to the contractual obligation of the company to deliver the message, that reference is descriptive of the relationship between the parties. The numerous references in the complaint to the careless and negligent conduct of the defendant in failing to get the address correctly and in failing to deliver the message make it apparent that the complaint adequately alleges an action in tort. In any event, the plaintiff was entitled to have the case tried on the proper theory regardless of the theory of the complaint. Even prior to the adoption of Rule 54.03 of Rules of Civil Procedure, we held under the system of code pleading that the specific facts set forth in the pleading must speak for themselves and no labeling of it is essential to its validity nor need the legal conclusions to be drawn therefrom be stated. In Walsh v. Mankato Oil Co. 201 Minn. 58, 65, 275 N. W. 377, 380, we held that recovery may be had for either tort or breach of contract, if the facts proved within the allegations of

the pleadings justify it. See, also, Moll v. Bester, 177 Minn. 420, 225 N. W. 393.

■ It is well settled and the parties do not seem to dispute that under controlling Federal law and under the law of most jurisdictions the sendee or the addressee of a telegram may sue either on the contract of transmission for the negligent breach thereof or in tort for negligent breach of the public duty imposed upon the telegraph company by statute or by common law.[1] The Federal law has always been that a telegraph company has a duty to exercise due care in the transmission of a message. See, Primrose v. Western Union Tel. Co. 154 U. S. 1, 14 S. Ct. 1098, 38 L. ed. 883; Western Union Tel. Co. v. Hall (4 Cir.) 287 F. 297; Beasley v. Western Union Tel. Co. (C. C. W. D. Tex.) 39 F. 181; Fererro v. Western Union Tel. Co. 9 App. D. C. 455, 35 L. R. A. 548. There is dicta in Western Union Tel. Co. v. Cowin & Co. (8 Cir.) 20 F. (2d) 103, 54 A. L. R. 1362, to the same effect. See, also, 1 C. J. S., Actions, § 49e(11).

■ The plaintiff claims the court erred in failing to give requested instructions as to the liability of the defendant for failure to properly get the correct name and address of the sendee; for its breach of duty in failing to make inquiry and diligent effort to obtain the correct name and address; for its breach of duty in failing to promptly transmit and deliver the message; and for its failure to notify the sender within a reasonable time of its inability to make delivery of the message so as to give the sender an opportunity to protect his interest by communicating by other means. Instead the trial court gave the following instructions as to the liability of the defendant:

---

[1]Where a telegraph company has duly received a lawful message for transmission, it is its duty to deliver a correct copy of the message to the proper person without unreasonable delay, and it will be held liable for all damages proximately resulting from the breach of such duty. 86 C. J. S., Tel. & Tel., Radio & Television, §§ 140, 141; 52 Am. Jur., Telegraphs and Telephones, § 117.

Where a telegraph company accepts messages by a telephone which it maintains for that purpose, the agent or operator in receiving a message by such means acts in his capacity as agent of the company, and the company is liable for his negligence in erroneously writing the message. 86 C. J. S., Tel. & Tel., Radio & Television, § 139.

"In telephoning in a message to a telegraph company it is the duty of the sender to plainly and intelligibly state the message including the address of the sendee of the telegram, and it is the duty of the telegraph company to exercise due care in receiving the message and writing down its terms including the address of the one to whom the telegram is directed. *The sending of a telegram, jurors, involves the making of a contract between the sendor and the telegraph company. To give rise to any legal rights between the parties there must be a valid contract or agreement and one essential of a valid contract is that the minds of the parties must agree on the terms, that is, there must be a meeting of the minds on all the terms of a contract between the parties. If one party without fault misunderstands or mistakes a term of the proposed contract, there is no contract. If the minds in this case of the parties never got together on the terms, where the address of the addressee was, then, of course, there was no contract, and no lawsuit should arise here; but if the minds of the parties did meet, that is if the defendant's agent and Ralph Slattum understood the correct name and address of the sendee of the telegram, but the agent failed, negligently failed to write down the correct address, there would still be a contract between the parties binding the defendant company to deliver the message and if the defendant negligently failed to deliver the message it would be liable for damages proximately resulting therefrom.* \* \* \*

\* \* \* \* \*

"Now, jurors, for the plaintiff to recover a verdict at your hands in this case for damages, he must establish by a fair preponderance of the evidence, first, that there was a valid contract or agreement between Ralph Slattum and the defendant telegraph company to deliver this telegram to the plaintiff at Austin, Minnesota; second, that the failure to so deliver the telegram was a cause, was a proximate cause of the failure of the truckload of eggs to get to Jersey City in time, to get there by three o'clock on November 23rd. *If the plaintiff has failed to establish everyone of these propositions, either that there was a contract, or that if there was a contract that it was a proximate cause of the failure to get the eggs there in time, then your verdict would be for the defendant, no cause of action.* If he has established both

of these propositions by a fair preponderance of the evidence, then you will fix the damages within the rules I shall now state." (Italics supplied.)

We have held that a party is entitled to have the case tried and determined on a right theory. See, Moll v. Bester, 177 Minn. 420, 225 N. W. 393; Swanson v. Brown, 163 Minn. 401, 204 N. W. 44; 14 Dunnell, Dig (3 ed.) § 7165, note 96.

As we view the instruction given by the court, its plain import was that there had to be a mutual understanding as to the correct name and address of the sendee before the jury could consider the question of the negligent failure to deliver the telegram. This in effect removed from the consideration of the jury the issue of whether or not under the circumstances there was a breach of duty on the part of the company in failing to make a correct record of the name and address of the sendee, or whether there was a subsequent breach of duty on the part of the defendant by reason of its alleged failure to get the correct name and address after it became apparent that the one it had was in error. The jury could have understood from the instructions that before the company could be held liable, there had to be a mutual understanding as to the terms of the telegram, and since the name and address used were obviously in error, no such understanding existed. The question as to whether or not the error in the name and address of the sendee resulted from the negligent conduct of the defendant or its agents was in effect removed from the consideration of the jury.

Viewing the instructions from the standpoint of their impact upon the minds of the jury, we conclude that they were prejudicial to the plaintiff in that they placed too great emphasis on the necessity for the jury to find the existence of a contract or a meeting of the minds; and on the further ground that the plaintiff was deprived of a proper instruction on the issue of the defendant's negligence. Accordingly, a new trial is granted.

The evidence may tend to show that the plaintiff's damage was caused by Slattum's negligence in not leaving Donegal earlier. The contributory negligence of the plaintiff may appear as a matter of law. However, this issue is not before us and there is no indication in the

printed record that the defendant sought a ruling on this point by the trial court. That issue will have to remain a hazard for the plaintiff to face on retrial.

Reversed and new trial granted.