**Arthur KETTLER, Respondent,**

v.

**Marvin HAMPTON, d/b/a Overland D–X Service Station, Appellant.**

**No. 49371.**

Supreme Court of Missouri,

Division No. 2.

Jan. 14, 1963.

Motion for Rehearing or to Transfer to Court En Banc Denied March 11, 1963.

A. G. Holtkamp, James J. Amelung, Holtkamp, Miller, Risch & Amelung, St. Louis, for appellant.

James F. Koester, and James M. Byrne, St. Louis, for respondent.

BOHLING, Commissioner.

Marvin Hampton appeals from a judgment awarding Arthur Kettler $16,000 for personal injuries. He questions the submissibility of plaintiff's case, the giving of certain instructions, and the propriety of an argument on behalf of plaintiff.

Plaintiff was injured September 4, 1959, while at defendant's service station in Overland for a "grease job" on his 1956 Chevrolet automobile, equipped with automatic transmission, when his car suddenly lurched forward. Plaintiff contends defendant placed the selector (gear shift) lever in drive position. Defendant contends plaintiff left it in drive position when he got out of the car.

We first state the evidence favorable to plaintiff.

Defendant's "grease rack" or "lift" resembles the letter "H," two iron channels with a connecting link across the middle. It has no runways for the wheels. The rack comes up against the axle or frame of a car and lifts it so the wheels are hanging in the air. Cars have to be centered on the rack. Three iron bars (we understand ¼ to ½ inch high) on the floor back of the rack are used to position car's rear wheels. Aside from the bars, the floor surface is flat. There are no other blocks or stops to keep a car from rolling.

Defendant, standing at the left front corner of plaintiff's automobile, guided

plaintiff's positioning of his car over the rack by hand motions, stopping it with the rear wheels between the second and third iron bars and the front end about five feet from a tool cabinet. He told plaintiff to leave the motor running and he would check the automatic transmission. The plaintiff left his motor running, his car in neutral gear, and his brake released. Defendant was standing with his hand on the driver's door when plaintiff got out. Plaintiff moved to near the front of his car alongside his left front fender. He heard no tapping or pecking noise from his motor. Out of the corner of his eyes, he saw defendant leaning inside the car, with his head lined up with the center of the steering wheel. He could not tell in what direction defendant was looking or where defendant's hands were. Defendant was called by some one in the office and just as defendant left plaintiff heard a tapping or pecking noise start all of a sudden in his motor. Plaintiff did not then know what caused this noise in his motor, or that his selector lever had gotten into drive position.

Plaintiff worked as a truck mechanic in about 1940 and 1941, and continued to do mechanical work on his automobiles, adjusting and tuning them. He walked to the center of the front of his car, raised the hood, listened to his motor, reached forward, "jiggled the throttle"; that is, gunned the motor and caused it to get quite a bit faster. The car lurched, jumped forward, driving plaintiff into the work bench and breaking both of his legs. Plaintiff, although he was unable to stand, pushed the car back about four feet. Defendant, not looking for any defect, noticed nothing wrong with plaintiff's car or its transmission system when he drove it out of the service station immediately after plaintiff's injury.

Plaintiff testified there never had been any work on the transmission or connecting links between the lever and the transmission of his car. In March, 1960, he made tests with his car after being released from the hospital. He placed the front of his car against the bumper of another car. Standing alongside his left front fender with his motor running and his selector lever in "neutral," he heard no tapping or pecking noise, but when the lever was placed in drive position and the motor started laboring this tapping or pecking noise started. It was the same noise he heard at defendant's service station. It occurred only when the lever was in the drive position. He tried "all kinds of things" (jarring and shaking the car) to make the selector lever drop accidentally into the drive position but he could not make it do so. The lever had to be put manually in the drive position.

Willard McKinley, a school teacher, Milton A. Rossner, a laundryman, and defendant were defendant's witnesses. They were in the office when plaintiff arrived. Defendant, after plaintiff positioned his car over the rack, suggested that plaintiff "leave the engine running" in order to check the automatic transmission. He then told plaintiff he was going to pay his laundryman and would be right back. Defendant testified that, after plaintiff positioned his car and prior to the accident, he was never on the driver's side of plaintiff's car, never looked inside plaintiff's car, and passed on the passenger's, the right, side of plaintiff's car when he went to the office. As defendant started to pay Rossner, a crash was heard in the grease room. The three men immediately went into the grease room, and found plaintiff injured and in a sitting position in front of his car.

There was testimony that plaintiff, within a few minutes after his injury, stated: "I had forgotten I left the car in gear." "How foolish can a man be." "Nobody's fault but my own." McKinley testified Rossner had gone to get something for a tourniquet when plaintiff made the statements. At the trial plaintiff testified he would not deny making the statements; he did not know whether he made them or not; he may have made them. He explained that at the time of the accident he thought the cotter key might have fallen out as he was

stopping his car so that even though he moved the selector lever to neutral, the transmission would still remain in drive gear; that something of this nature had happened on a prior occasion. It was following the tests plaintiff made after being released from the hospital that he learned there was nothing wrong with the transmission on his car and that the selector lever had to be placed in drive gear manually.

In passing on the submissibility of plaintiff's case, the evidence is to be reviewed in the light most favorable to the plaintiff, including all inferences of fact which a jury might draw with propriety. Hall v. Rager, Mo., 357 S.W.2d 83[1]; Flanigan v. City of Springfield, Mo., 360 S.W.2d 700[3].

Defendant contends there was no direct or legally sufficient circumstantial evidence to establish that he put the selector lever in drive position. He cites Davidson v. Hennegin, Mo., 304 S.W.2d 836, 839[6]; Bates v. Brown Shoe Co., 342 Mo. 411, 116 S.W.2d 31, 33[3, 4]; Lindsay v. Wille, Mo., 348 S.W.2d 1, 4[5–6], and Pietraschke v. Pollnow, Mo.App., 147 S.W.2d 167, 171 [8, 9]. Defendant argues that plaintiff, who had just driven his car into the grease room, might have left the car in drive gear, imposing no liability on defendant; or the lever may have dropped into drive position without being touched by anyone. In each of defendant's cited cases there was no substantial evidence that the defendant or defendants committed the alleged negligent act, including circumstantial evidence negativing the idea it was due to a cause not attributable to defendant. Defendant's cases supra, and the Pietraschke case at 169[1, 2]. In the case at bar, if plaintiff's evidence is believed, he left the selector lever in neutral when he got out of his car; defendant was the only person who, thereafter and prior to plaintiff's injury, was in a position to have moved the lever from its neutral position to its drive position; and, according to

plaintiff, the lever had to be moved manually from its neutral position to put it in drive position.

The Pietraschke case (supra 171[8, 9]) was a master and servant case. Plaintiff, a house servant, ran a needle into her hand when she made a quick swipe to brush ashes off a card table. The court considered the servant assumed the ordinary risks incident to the employment; that the master had no reason to anticipate the servant would perform the duty involved without observing and removing such objects, or would not use a cloth to wipe off the table. This situation differs from moving an automobile selector lever from neutral to a drive position with the motor running and the brakes released and then leaving the automobile with its auto-mechanic owner standing near the front of it.

The negligence of a motorist in leaving an automobile on a street in gear with the motor running, without anyone to operate it, and with guests in the rear seat, has been held a jury question. Myers v. Hauser, Mo.App., 61 S.W.2d 214[3]. See, among others: Humble Oil & R. Co. v. Martin, 148 Tex. 175, 222 S.W.2d 995[3, 4, 7, 8]; Moody v. Clark, Tex.Civ.App., 266 S.W.2d 907[4, 6]; Block v. Pascucci, 111 Conn. 58, 149 A. 210[2]; Di Sabato v. Soffes, 9 A.D.2d 297, 193 N.Y.S.2d 184[7 et seq.]; Prager v. Isreal, 15 Cal.2d 89, 98 P.2d 729 [10, 11]; Waltzinger v. Birsner, 212 Md. 107, 128 A.2d 617[3]; Storey v. Parker, La.App., 13 So.2d 88[3]; 2A Blashfield, Cyc. Automobile L. & P., § 1206; Annotations, 16 A.L.R.2d 1010; 51 A.L.R. 2d 645.

The case at bar differs from defendant's authorities. It may be close; but defendant's presentation does not establish that plaintiff failed to make a submissible case.

Plaintiff's verdict-directing instruction (No. 2) required findings, in the conjunctive, that on the occasion in evidence plaintiff was at defendant's to have his automobile lubricated; that defendant aided plaintiff in positioning his automobile over

the rack in the grease room; that defendant instructed plaintiff to leave his motor running; that plaintiff followed said instruction, did leave his motor running, and left his automobile with its selector lever in its "neutral" position and (quoting): "if you further find that immediately thereafter defendant leaned into plaintiff's automobile and moved the selector lever into a drive position and that defendant left the automobile of the plaintiff and that thereafter plaintiff raised the hood of his automobile and moved the throttle to accelerate the motor, if you so find, and if you further find that immediately thereafter plaintiff's automobile was caused to move suddenly forward striking and injuring plaintiff and if you further find that the movement of said selector lever on the part of defendant was a failure to exercise ordinary care and was negligent and that plaintiff was injured as a direct result of the negligence of the defendant and that plaintiff was at all times in the exercise of ordinary care for his own safety * * " the verdict should be in favor of plaintiff.

Defendant first contends the instruction is erroneous because it lacks a finding of "forseeability," stressing Phillips v. Stockman, Mo.App., 351 S.W.2d 464, 471 [8–17].

■ Ordinarily, the duties imposed by the law of negligence arise out of circumstances and are based on forseeability or reasonable anticipation that harm or injury is a likely result of acts or omissions. Hull v. Gillioz, 344 Mo. 1227, 130 S.W.2d 623, 627 [5]; Taylor; v. Hitt, Mo.App., 342 S.W.2d 489, 494 [7]. See also 38 Am.Jur., Negligence, § 70; 86 C.J.S. Torts § 28; 2 Restatement, Torts, § 302. Defendant was not charged with an intentional wrong.

In the Phillips case plaintiff predicated a verdict (l. c. 475 of 351 S.W.2d) on the failure of the operator of a stalled truck, which occupied part of the traveled portion of the highway, to exercise the highest degree of care to give warning signals to westbound motorists on the highway at a time of the day when the setting sun inter-

fered with their vision. The court considered (l. c. 476) the knowledge, actual or constructive, of the operator (defendant Fred) of the peril created by the stalling of the truck was an essential prerequisite to a finding he was negligent in failing to warn westbound motorists and was a disputed factual issue permitting of different conclusions by reasonable men. The court held (l. c. 477 [17]): "For failure to hypothesize and require a finding to the effect that defendant Fred knew, or in the exercise of the highest degree of care could and should have known, that the stalled truck had come to rest at a time when and a place where the vision of some westbound drivers probably would be materially affected and severely limited by the setting sun (if so) and that, by reason thereof, some accident and injury might result if adequate warning were not given to westbound drivers on Route D, instruction P 1 was fatally deficient and prejudicially erroneous."

■ Plaintiff's position is that the Phillips case was submitted on defendant's failure to warn (l. c. 475) whereas plaintiff's case was submitted on defendant's movement of the selector lever into drive position. This overlooks, as pointed out in the Phillips case (l. c. 476 [16]), that a verdict-directing instruction "must require the finding of all facts disputed or not conceded, which are necessary to support the directed verdict, and may neither ignore nor assume any such fact." The only charge in plaintiff's petition upon which said instruction could have been based read: "Said defendant negligently and carelessly caused the gear shift lever of plaintiff's said automobile to be placed in a drive position and thereafter failed to warn plaintiff that said gear shift lever had been placed in a drive position."

■ Under the peculiar facts of this record the mere placing of the selector lever in drive position with the motor running did not cause plaintiff's automobile to move or to injure plaintiff. The automobile did not move forward until after plain-

tiff heard the tapping or pecking noise, walked to the center of the front of the car, raised the hood, listened to his motor, reached forward and gunned the motor, which caused the car to lurch forward and injure him. He thereafter pushed the car back. This occurred in the grease room of a service station, not on a public street or location, to one with experience as an auto mechanic. It has been said Missouri law recognizes that a "defendant cannot be held liable for negligence for failure to take precautionary measures to prevent an injury, which if taken would have prevented it, when resultant injury could not reasonably have been foreseen and would not have happened unless under exceptional circumstances." McHugh v. National Lead Co., E.D.Mo., 60 F.Supp. 17, 20 [4]. See Lawson v. Higgins, 350 Mo. 1066, 169 S.W.2d 881, 883 [8, 9]; American Brewing Co. v. Talbot, 141 Mo. 674, 42 S.W. 679, 682, 64 Am.St.Rep. 538; Annotation, 155 A.L.R. 157. "'Anticipation' or 'foreseeability' is an essential element in determining negligence. Restatement of Torts, Sec. 289." Gladden v. Missouri Pub. Serv. Co., Mo., 277 S.W.2d 510, 519 [10]. See Restatement, Torts, § 284. "One cannot ordinarily be charged with negligence in failing to anticipate negligence on behalf of another. One is not negligent in assuming and acting upon the assumption that others will not violate the law or fail to exercise due care for their own safety, in the absence of notice to the contrary." Highfill v. Brown, Mo., 340 S.W.2d 656, 663 [9]. Some danger should exist toward which precautions are to be directed if a defendant is to be held for failing to take precautions. Defendant's knowledge, actual or constructive, of a probable hazard created by the placing of the selector lever in drive position was not a conceded fact and was an essential prerequisite to a finding that defendant was negligent. In these circumstances an appropriate finding that defendant knew or should have known, in the exercise of ordinary care, that to leave the automobile with the selector lever in drive position was hazardous and dangerous should have been submitted in the instruction.

We need not consider defendant's other attacks against the instruction. Some may be readily obviated, and counsel will have an opportunity to make such corrections as he may consider proper.

■ Defendant also questions the giving of instruction No. 2 and instruction No. 7 on the ground there was no sufficient circumstantial evidence to permit of the inference that defendant placed the selector lever in drive position. Instruction No. 7 was to the effect that if the jury found from the evidence, including the circumstantial evidence, the facts to be as submitted in instruction No. 2, then plaintiff had met the burden of proof required of him. Our holding that the evidence, when viewed in the light most favorable to plaintiff, permitted of a finding that defendant placed the selector lever in drive position refutes the position taken by defendant with respect to instruction No. 7.

■ ■ Plaintiff's counsel, in his closing argument, stated that Dr. Belmont Thiele had examined plaintiff on behalf of defendant; was never called to the witness stand, and, from this, the jury could infer the doctor's testimony would have been adverse to defendant. Defendant's objection to this line of argument was overruled. We find no evidence of record that Dr. Thiele examined plaintiff for the defendant. A supplemental transcript, filed by plaintiff, discloses that his counsel during the voir dire examination of the jurors stated that defendant's attorney had selected Dr. Thiele to make an examination of plaintiff. Unsworn statements of trial attorneys do not prove themselves or constitute evidence. Wilson v. Motors Ins. Corp., Mo.App., 349 S.W.2d 250 [4]. Defendant's objection should have been sustained. Murphy v. Tumbrink, Mo.App., 25 S.W.2d 133 [3].

The judgment is reversed and the cause is remanded.

BARRETT and STOCKARD, CC., concur.

PER CURIAM.

The foregoing opinion by BOHLING, C., is adopted as the opinion of the court.

STORCKMAN, J., concurs.

LEEDY, J., and EAGER, P. J., concur in result and concur in the opinion except that portion holding that Instruction No. 2 was prejudicially erroneous.