**Robert WILSON, Appellant,**

v.

**Marvin E. RAMACHER, et al., Defendants,**

**City of Lino Lakes, Respondent.**

No. C4–82–1592.

Supreme Court of Minnesota.

July 27, 1984.

Richard J. Gabriel, St. Paul, for appellant.

L.T. Merrigan, Minneapolis, for respondent.

SIMONETT, Justice.

We affirm the trial court's summary dismissal of claims by a landowner against a municipality for negligent and unreasonable diversion of surface waters onto the landowner's property. We reverse and remand, however, to allow the landowner to proceed with a claim for inverse condemnation.

Plaintiff-appellant Robert Wilson owns a 10-acre tract in the City of Lino Lakes. Immediately north of his tract is Ulmer's Rice Lake Addition, a newly platted residential area now containing some 34 homes. Immediately south of plaintiff Wilson's tract is Golden's Rice Lake Terrace Addition, also an improved, platted area. The land throughout this entire area slopes downward from north to south so that the natural flow of surface waters is from Ulmer's Rice Lake Addition southerly across plaintiff's land, and continuing southerly across Golden's Rice Lake Terrace.

In 1979, plaintiff Wilson commenced this lawsuit, claiming that his land, once dry, was now wet, soggy, and unusable. He sued the owners and developers of the "upstream" tract, alleging that they were negligent in developing Ulmer's Rice Lake Addition, thereby causing surface water runoff to be channeled onto his land. Plaintiff Wilson also sued the owners of lots south

of plaintiff's property, alleging that they had put fill on their properties, thus raising the elevation and blocking the natural flow of surface waters off plaintiff's property. In addition, the engineering firm that designed and installed the surface water drainage system for the defendant developers of Ulmer's Rice Lake Addition was made a defendant. Finally, plaintiff Wilson sued the City of Lino Lakes.

This appeal concerns only the plaintiff's claims against the city. Plaintiff's complaint alleges that the city (1) was negligent in issuing permits allowing the "downstream" owners to raise the height of their land, thereby blocking the natural flow of surface waters off plaintiff's property; (2) was negligent "in platting, planning, approving and developing" Ulmer's Rice Lake Addition so that surface waters were diverted "downstream" onto plaintiff's property; and (3) was liable in trespass for diverting surface waters onto his property, this diversion being unreasonable under the reasonable use doctrine. The complaint does not allege that the city was negligent in the operation or maintenance of the storm sewer system. Plaintiff claims his land "has become flooded and unfit for use" and he asks for money damages and injunction of a nuisance.

The pertinent facts are these. Plaintiff Wilson purchased his 10 acres in 1966 for $600. Plaintiff claims the land was then dry. The defendant city claims it then was, and continues to be, low-lying, swampy wetland. Concededly, plaintiff's land has always been in the path of surface water runoff from the higher land to the north flowing southerly down to Rice Lake. In 1969, without a building permit, plaintiff put in some fill, sunk 10-foot pilings and built a garage, a shop, and some sleeping quarters on his property.

In the spring of 1977, the city, after various meetings and a public hearing, approved the platting of Ulmer's Rice Lake Addition. The plat provides for a surface water drainage system which apparently includes three drainage easements that flow into a holding pond adjacent to the north boundary line of plaintiff's tract. The drainage system and the subdivision streets were built by the defendant developers and, along with the plat, were accepted by the city. Plaintiff Wilson claims the Ulmer property, before its development, had a rapid percolation rate and absorbed nearly all of its surface waters, but, with the subdivision development, some 85% of the surface waters now run onto plaintiff's property.

The downstream property, Golden's Rice Lake Terrace, was platted and developed in 1946, long before plaintiff Wilson bought his 10-acre tract. Sometime after 1969, the defendant downstream owners in Rice Lake Terrace added fill to their property, allegedly causing surface waters to back up on plaintiff's land. Plaintiff claims this fill was added under permits issued by the city.

The defendant city moved for summary judgment, arguing governmental immunity, and, alternatively, no negligence on its part as a matter of law and no diversion of surface waters by any unreasonable use. On October 19, 1982, the trial court granted defendant city's motion for summary judgment, ruling that the city's actions were within the legislative grant of governmental immunity from liability for discretionary acts.[1] Plaintiff Wilson appeals.[2] On appeal, for the first time, Wilson also argues that if the city's acts were discretionary, immunity was waived by the city's procurement of liability insurance.[3]

---

1. Minn.Stat. § 466.03, subd. 6 (1982), provides that a municipality shall be immune from liability for "[a]ny claim based upon the performance or the failure to exercise or perform a discretionary function or duty, whether or not the discretion is abused."

2. Plaintiff's appeal is from a partial summary judgment since plaintiff has claims outstanding against the other defendants. We grant discretionary review.

3. Minn.Stat. § 466.06 (Supp.1983) authorizes municipalities to procure liability insurance "for damages resulting from its torts and those of its officers, employees, and agents, including torts specified in section 466.03 for which the municipality is immune from liability. * * *

■ 1. Plaintiff-appellant Wilson first claims the trial court erred in holding as a matter of law that the city was not liable to plaintiff for issuance of any permits to the downstream owners to put fill on their land. The trial court's ruling was correct. *See Anderson v. City of Minneapolis*, 287 Minn. 287, 178 N.W.2d 215 (1970) (issuance of permit a discretionary municipal function).

■ 2. Plaintiff-appellant next contends the trial court erred in ruling as a matter of law that the city was not liable for negligence in approving and accepting the Ulmer Rice Lake plat and the subdivision improvements. We affirm the trial court's ruling. The trial court reviewed the decisionmaking process undertaken by the city council, involving meetings and a public hearing and the balancing of complex and competing factors, and concluded that the council's acts involved planning and policy judgments that qualified as immune, discretionary acts. We agree. In *Cairl v. State*, 323 N.W.2d 20, 23 (Minn.1982), we discussed the public policy considerations behind the grant of discretionary immunity. Some services to the public cannot be effectively accomplished if performance of these services is chilled by concern for second-guessing by a tort litigant, who, we might add, here had the opportunity to raise any claims of abuse of municipal discretion in the policymaking process at the open meetings and the public hearings. We hold that the defendant City of Lino Lakes, on this record, had discretionary, governmental immunity in accepting and approving the Ulmer Rice Lake plat and improvements.

■ 3. We do not consider the issue of whether the procurement of liability insurance by the city was a waiver of discretionary immunity, because plaintiff-appellant failed to present the issue to the trial court. We observe, however, that on defendant's motion for summary judgment plaintiff offered no facts suggesting negligence on

the part of the city. *See Erickson v. General United Life Insurance Co.*, 256 N.W.2d 255, 259 (Minn.1977) (summary judgment is proper when nonmoving party fails to provide the court with specific facts indicating that there is a genuine issue of fact). For plaintiff to show simply the acceptance of the improvements and the flooding of his property raises no inference of a breach of a duty owed to the landowner to use reasonable care. While the trial court disposed of the summary judgment motion by finding discretionary immunity even assuming negligence, we further hold that summary judgment for the city on the negligence claim was also proper on the alternative ground urged by the city that as a matter of law there was no showing of any factual issue on negligence.

■ 4. The third major issue concerns the reasonable use test for diversion of surface waters. "Reasonable use," it needs to be remembered, is a different theory than "reasonable care," a negligence concept. *See Highview North Apartments v. County of Ramsey*, 323 N.W.2d 65, 72 (Minn.1982). The trial court ruled that whether the city's diversion of surface waters was reasonable under the reasonable use doctrine presented a factual dispute not amenable to summary judgment, but that, even so, any liability of the city for its use of plaintiff's land was foreclosed because the city had discretionary immunity. We hold that recovery under the reasonable use doctrine is not applicable here; consequently, there is no need to reach the issue of discretionary immunity.

■ A landowner has the right to make a reasonable disposition of surface water. This may include diverting water off his land onto the land of another, as long as the diversion is a reasonable use. The reasonable use test requires consideration of alternatives and determining whether the benefit to the diverter's land outweighs the harm to the land receiving the

---

The procurement of such insurance constitutes a waiver of the defense of governmental immunity to the extent of the liability stated in the policy but has no effect on the liability of the municipality beyond the coverage so provided."

surface waters. *See, e.g., Enderson v. Kelehan,* 226 Minn. 163, 32 N.W.2d 286 (1948). The reasonable use doctrine traditionally has been applied to private landowners. This common-law rule does not apply where the diverter is the state or its political subdivisions and the diversion occurs as part of a public drainage project. *In re Town Ditch No. 1,* 208 Minn. 566, 295 N.W. 47 (1940); *In re Stevens,* 291 Minn. 263, 265–66, 190 N.W.2d 482, 484 (1971); *see also Board of Transportation v. Terminal Warehouse Corp.,* 300 N.C. 700, 268 S.E.2d 180 (1980). While a private landowner may reasonably divert surface waters off his property, even to the detriment of another landowner, the state ordinarily may not, because "[t]he state, in taking or damaging property by drainage proceedings, does not have the rights of a landowner because it has no estate. It proceeds, not as an owner of property, but in the exercise of sovereign right. That right is conditioned upon compensation." *In re Town Ditch No. 1,* 208 Minn. at 571–72, 295 N.W. at 49.

Here the City of Lino Lakes has a municipal storm sewer system which, allegedly, collects and directs surface waters from a residential subdivision onto plaintiff's land in quantities in excess of what would otherwise be the normal run-off. It does this not as an owner of land in any proprietary sense but as the owner of public improvements and on behalf of the public. It acts for a public purpose. The diversion may be reasonable as a needed public improvement, a public benefit far outweighing the flooding of an individual property owner's land, but obviously this is not the kind of "reasonable use" contemplated by the reasonable use doctrine for surface waters. For a city to "take" a

property owner's land under the guise of reasonable use would subvert the law of eminent domain. We hold that the reasonable use doctrine does not apply to a diversion of surface waters by a municipality as part of a public drainage system, and that, if the damages caused by the diversion amount to a taking of the landowner's property, the landowner is entitled to bring an action for inverse condemnation under the law of eminent domain. *See Spaeth v. City of Plymouth,* 344 N.W.2d 815 (Minn. 1984).

Our problem here is that plaintiff Wilson has misconceived his remedy. A landowner whose property has been flooded by the alleged actions of a municipality has several possible remedies or causes of action, such as negligence,[4] nuisance,[5] trespass,[6] and inverse condemnation.[7] It is not always easy to determine which cause of action applies, but a helpful approach is to focus on the nature of the damages or harm done rather than on a characterization of the municipality's acts.

Here, plaintiff claims that the diversion of surface waters is substantial and permanent and has rendered his property unfit for use. This would appear to be the kind of damage which constitutes a taking and which would afford plaintiff the remedy of inverse condemnation. Unfortunately, plaintiff's complaint, notwithstanding its verbosity, neither alleges a taking nor asks for inverse condemnation. The complaint does, however, allege a trespass and a direct invasion of plaintiff's property by the diverted surface water. It alleges the kind of damages that appear to constitute a taking, and it asks for "such other and further relief as the Court may deem just and equitable." Particularly at this

---

4. *Pettinger v. Village of Winnebago,* 239 Minn. 156, 58 N.W.2d 325 (1953).

5. *Highview North Apartments v. County of Ramsey,* 323 N.W.2d 65 (Minn.1982). There plaintiff landowner's damages consisted of surface waters seeping into plaintiff's apartment buildings because of a municipal storm sewer project. Plaintiff's damages lent themselves to a nuisance action. We applied a reasonable use doctrine analysis, not as an independent theory of recovery, but to provide the liability basis for the nuisance harm.

6. *Greenwood v. Evergreen Mines Co.,* 220 Minn. 296, 312, 19 N.W.2d 726, 734–35 (1945).

7. *Spaeth v. City of Plymouth,* 344 N.W.2d 815 (Minn.1984).

pretrial stage, we do not think plaintiff should be denied the right to proceed in inverse condemnation where his pleadings set out the requisite facts for a taking and plaintiff has simply neglected to supply the proper label for the remedy he seeks. *See, e.g., Siats v. Western Union Telegraph Co.*, 251 Minn. 412, 415–16, 88 N.W.2d 199, 202 (1958); *cf. Johnson v. County of Steele*, 240 Minn. 154, 164, 60 N.W.2d 32, 39 (1953). We reverse and remand, granting plaintiff leave to amend his complaint to allege an inverse condemnation claim. The defense of discretionary immunity does not, of course, apply to inverse condemnation.

Affirmed in part, reversed in part, and remanded.