Trent WHITEFORD, a minor, by Rhonda WHITEFORD, his mother and natural guardian; and Rhonda Whiteford, individually, Respondents,

v.

YAMAHA MOTOR CORPORATION, U.S.A., et al., pet., Appellants,

Rapid Sport Center, Inc., Respondent,

and

YAMAHA MOTOR CORPORATION, U.S.A., et al., Third–Party Plaintiffs,

v.

Michael WHITEFORD, individually, Third–Party Defendant.

No. C7–97–442.

Supreme Court of Minnesota.

Aug. 27, 1998.

Bruce A. Peterson, Jodi L. Johnson, Hinshaw & Culbertson, Minneapolis, for appellants.

Michael A. Stern, Richard D. Snyder, Fredrikson & Byron P.A., Minneapolis, for respondents.

## OPINION

PAGE, Justice.

In January 1992, Trent Whiteford ("T. Whiteford"), then age 5, was seriously injured while tobogganing down a hill when he collided head first with a stationary Yamaha Snoscoot snowmobile. As a result of the impact with the Snoscoot, he suffered severe facial injuries and is now permanently disfigured. T. Whiteford and his mother, Rhonda Whiteford, (the "Whitefords") commenced this action against Yamaha Motor Corporation, U.S.A., et al.,[1] claiming negligent design and manufacture of the Snoscoot, negligent failure to warn of a dangerous condition, strict liability for defective design and failure to warn, in addition to certain breach of warranty claims.

Yamaha moved for summary judgment, seeking to have all of the Whitefords' claims dismissed. The district court granted Yamaha's motion in its entirety. On appeal, the court of appeals reversed in part and remanded the Whitefords' negligence and strict liability claims for trial. The court of appeals concluded that summary judgment was precluded because an affidavit submitted by the Whitefords' human factors expert created genuine issues of material fact for trial with respect to foreseeability. Because we agree with the district court that T. Whiteford's injuries were not foreseeable and, therefore, Yamaha owed him no duty, we reverse the court of appeals and reinstate the judgment of dismissal.

On January 11, 1992, 8-year-old Travis Whiteford, T. Whiteford's older brother, was operating a Snoscoot snowmobile on the Whiteford family's 10-acre lot in Andover, Minnesota. At the same time, T. Whiteford and a friend were tobogganing on a hill in the area where Travis Whiteford was operating the Snoscoot. At some point, Travis Whiteford stopped the Snoscoot at the bottom of the hill and T. Whiteford, sliding head first down the hill, managed to slide between the Snoscoot's skis, causing his face to hit the leading edge of a metal bracket on the underside of the Snoscoot. As a result, T. Whiteford suffered serious lacerations to his face, had to undergo extensive surgery, including the reattachment of his nose, and has been left permanently disfigured.

After completion of discovery, Yamaha moved for summary judgment. In order to defeat the summary judgment motion, among other things, the Whitefords asserted in an affidavit by Dr. Kvalseth, a human factors expert, that the bracket on the underside of the Snoscoot made the snowmobile unreasonably dangerous and that it was foreseeable that T. Whiteford's injuries could occur. Notwithstanding Dr. Kvalseth's affidavit, the district court found that there was no unreasonable risk of harm from which Yamaha had a duty to protect T. Whiteford and dismissed the complaint. The court of appeals, concluding that Dr. Kvalseth's affidavit raised genuine issues of material fact with respect to foreseeability, reversed and remanded the negligence and strict liability claims for trial. On appeal to this court, Yamaha argues that the trial court was correct in finding that Yamaha did not owe a duty to protect T. Whiteford because T. Whiteford's accident was not foreseeable. Yamaha further argues that Dr. Kvalseth's affidavit does not create any genuine issue of material fact regarding foreseeability.

Summary judgment is appropriate when the record demonstrates that there are no genuine issues of material fact for trial, and it is clear that the moving party is entitled to judgment as a matter of law.[2] When reviewing a grant of summary judgment, we review the facts in the light most favorable to the nonmoving party.[3] To defeat a summary judgment motion, the nonmoving party must come forward with specific facts showing that there are genuine issues for trial.[4] Further, in order to forestall summary judgment, the nonmoving party cannot "rely on 'unverified or conclusionary allegations' in the pleadings

1. The Whitefords also commenced an action against Rapid Sport Center, the retailer of the Snoscoot. That action was dismissed by the district court and the dismissal was affirmed by the court of appeals. The parties have not sought review of that decision.

2. Minn. R. Civ. P. 56.03.

3. *W.J.L. v. Bugge*, 573 N.W.2d 677, 680 (Minn. 1998).

4. *Thiele v. Stich*, 425 N.W.2d 580, 583 (Minn. 1988).

or postulate evidence which might be produced at trial." [5]

■ In Minnesota, it is well settled that a manufacturer has a duty to protect users of its products from foreseeable dangers.[6] But if the danger is not foreseeable, there is no duty.[7] In determining whether a danger is foreseeable, courts look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility.[8] That which is not objectively reasonable to expect is too remote to create liability on the part of the manufacturer.[9] Thus, in this case, the question that must be answered is whether T. Whiteford's accident was sufficiently foreseeable to impose a duty on Yamaha to protect T. Whiteford. When the issue of foreseeability is clear, the courts, as a matter of law, should decide it.[10] In close cases, the question of foreseeability is for the jury.[11]

The question of foreseeability presented in this case has not been previously addressed by this court. However, our disposition of the Whitefords' claims is guided by our reliance upon analogous decisions from other jurisdictions deciding claims by individuals injured by contact with stationary automobiles. *Hatch v. Ford Motor Company* [12] is one such case. In *Hatch*, the 6–year–old plaintiff walked into the sharp radiator ornament of a parked motor vehicle, puncturing and eventually losing an eye. In *Hatch*, the court stated:

> There is not involved in this case any question of a defect which created a risk of injury to its driver or passengers therein or to persons upon the highway through its use in the normal manner for which it was manufactured to be used * * *.

> The vehicle in question here, in the condition in which it was by the complaint alleged to be, was safe to park and could cause no harm except to one whose own acts or the acts of some third person caused him to collide with it. *Such a risk is not one which the defendant was required to anticipate or to protect against.*[13]

Similarly, in *Kahn v. Chrysler Corporation*,[14] the 7–year–old plaintiff rode his bicycle into a parked car, striking his temple on one of the car's pointed tailfins. In his suit, the plaintiff alleged that the defendant negligently designed and manufactured the car's tailfins.[15] In dismissing the suit, the United States District Court held:

> [The manufacturer] should not be required to anticipate all the possible ways in which a person may injure himself by falling against an automobile, nor should they have a duty to protect against such possible injuries. The duty of the automobile manufacturer extends to the ordinary use of the vehicle, and may even be such as to cover certain situations when the automobile is being negligently used. But the manufacturer has no obligation to so design his automobile that it will be safe for a child to ride his bicycle into it while the car is parked.[16]

Finally, in *Schneider v. Chrysler Motors Corporation*,[17] the adult plaintiff bent down in a dimly lit garage to locate his car keys and, in doing so, pierced an eye on his car's vent window. Over time, he lost vision in the eye.[18] The plaintiff's suit alleged that both

---

5. *Bugge,* 573 N.W.2d at 680 (citation omitted).

6. *Lovejoy v. Minneapolis–Moline Power Implement Co.,* 248 Minn. 319, 325, 79 N.W.2d 688, 693 (1956). *See also Hauenstein v. Loctite Corp.,* 347 N.W.2d 272, 275 (Minn.1984) ("[A] manufacturer's duty to warn in strict liability cases extends to all reasonably foreseeable users.").

7. *Lundgren v. Fultz,* 354 N.W.2d 25, 28 (Minn. 1984).

8. *See, e.g., Kettler v. Hampton,* 365 S.W.2d 518, 522 (Mo.1963).

9. *Id.* at 523.

10. *Larson v. Larson,* 373 N.W.2d 287, 289 (Minn. 1985).

11. *Id.; Lundgren,* 354 N.W.2d at 28.

12. 163 Cal.App.2d 393, 329 P.2d 605 (1958).

13. *Id.* 329 P.2d at 607 (emphasis added).

14. 221 F.Supp. 677 (S.D.Tex.1963).

15. *Id.* at 677–78.

16. *Id.* at 679.

17. 401 F.2d 549 (8th Cir.1968).

18. *Id.* at 552.

the automobile manufacturer and the glass manufacturer were negligent in their design, manufacture, and installation of the vent window.[19] In affirming the district court's dismissal of the suit, the Eighth Circuit held:

> [I]t is overstraining a manufacturer's duty to foresee that individuals would inadvertently allow their eye to come into contact with the glass edge of a wing vent window on a parked automobile. A manufacturer is not an insurer and cannot be held to a standard of duty of guarding against all possible types of accidents and injuries. Standards of design and manufacturing skill must be consonant with the stage of the art and the risks to be avoided must be foreseeable.[20]

■ The reasoning applied by the courts in *Hatch, Kahn,* and *Schneider* applies in this case. Yamaha's duty was to protect the Snoscoot's users, along with those who might be injured by its use or misuse, from foreseeable danger. Here, T. Whiteford was not using the Snoscoot. Further, while the Snoscoot was in "use" in the limited sense that Travis Whiteford had been riding it on the afternoon in question and had placed it in the spot where T. Whiteford slid into it, the Snoscoot was stationary[21] and not being operated at the time of the accident. Like the plaintiffs in *Hatch, Kahn,* and *Schneider,* T. Whiteford was injured when he slid his toboggan into the stationary snowmobile.[22] As

in *Hatch, Kahn,* and *Schneider,* the danger here was too remote to impose a duty on Yamaha and was not one which Yamaha was required to anticipate or protect against.[23] Under these circumstances, the district court properly dismissed the Whitefords' claims.

Reversed and judgment of dismissal reinstated.

GILBERT, Justice (dissenting).

I respectfully dissent from the majority opinion. The majority reasons that the manufacturer should not be held liable because Trent Whiteford was not using the Snoscoot, which was stationary and not being operated at the time of the accident, and because the danger was too remote to impose a duty and was not one which Yamaha was required to anticipate. This reasoning ignores the statutory definition of a mechanical hazard contained in Minn.Stat. § 325F.08[1] and places undue reliance on cases from other jurisdictions relating to parked cars. In so doing, the majority resolves numerous factual disputes that are traditionally decided by a jury.

First of all, this accident is not similar to accidents involving parked cars. Rather, it involved the use of a snowmobile by the 8–year–old brother of the injured 5–year–old Trent Whiteford. The Snoscoot was being used on a hill in the back of the family's 10–acre yard, while other children were tobog-

19. *Id.*

20. *Id.* at 557.

21. In their response to Yamaha's summary judgment motion and in arguments to this court, the Whitefords contend that there is a genuine issue of material fact as to whether the Snoscoot was stationary at the time of the accident. To support this contention, they point to the "conflicting" accounts of four witnesses to the accident. T. Whiteford and Travis Whiteford asserted, under oath, that the Snoscoot was stationary, while Aaron Puchalla and his sister Nicole recalled, in a statement given to an insurance investigator, that the Snoscoot was moving. As we previously stated, "unverified allegations" are not sufficient to defeat a summary judgment motion. Therefore, the unsworn statements of Aaron and Nicole Puchalla do not raise a "genuine issue of material fact" for trial.

22. We note that Dr. Kvalseth's affidavit, which asserts that there was a design defect in the

Snoscoot that made T. Whiteford's injuries foreseeable and which the court of appeals relied on in reversing the district court, does not raise any genuine issue of material fact with respect to whether T. Whiteford's accident was one which *Yamaha should have reasonably expected.* In this case, the alleged design defect does not change the fact that the Snoscoot was stationary and was not being operated at the time of the accident.

23. Because the undisputed facts in the record establish that the Snoscoot was stationary and not being operated at the time of T. Whiteford's accident, the safe toy statute does not create a cause of action in this case. *See* Minn.Stat. §§ 325F.08–.09 (1996). We further note that violation of the safe toy statute was not alleged in the Whitefords' amended complaint; was neither raised as an issue in nor decided by either of the lower courts; and was not an issue for which either party sought review by this court.

1. *See also* Minn. R. 2630.0100, subp. 12 (1997) ("Administering Safe Toys Act").

ganing down the same hill. In contrast to the parked car precedents from Texas, California and the Eighth Circuit on which the majority relies, this junior-size snowmobile was not parked and unattended. It is undisputed that the driver was still sitting on the snowmobile at the time of the accident, although there is disputed evidence as to whether the Snoscoot's engine was on or off at the time of the accident. It was quite foreseeable that other winter recreational activities such as tobogganing may have been taking place near the snowmobile.

The Whiteford family was enjoying the Snoscoot until Trent Whiteford's toboggan ran into the front of it as he was sliding down the hill. Trent Whiteford's face struck the sharp horizontal section of the Snoscoot under the carriage between the skis. This metal bracket was unguarded and was sharp enough to slice off Trent Whiteford's nose and deeply lacerate his face.

Trent Whiteford offered expert testimony from Dr. Tarold Kvalseth of the University of Minnesota Department of Mechanical Engineering. Dr. Kvalseth testified that the protruding metal edge is extraneous to the design of the bracket and that the mechanical function served by the design of the bracket could have been achieved with a safer design. He further concluded that the design was negligent and created a substantial danger of injury to anyone coming in contact with it.

At oral argument, Yamaha stated that the use of a stationary snowmobile on a hill, in the family's backyard where other children were sledding, was "not normal." Yamaha further admitted that if the snowmobile had been moving at the time of the accident, this would be a "tougher case" and the issue of foreseeability would create a more difficult question. Yamaha further conceded that foreseeability is virtually always a question of fact rather than a question of law.

The injury also appears to have been clearly exacerbated by the design of the Snoscoot. A second or more serious injury occurred to Trent Whiteford as a result of the Snoscoot's design.

Accordingly, at a minimum, a fact question has been created. As the majority points out in its opinion, close cases involving the questions of foreseeability are for the jury to decide rather than the court.[2] The majority also correctly points out that Yamaha's duty was to protect Snoscoot users and those who might be injured by such a use or misuse from foreseeable dangers. The hazardous toy statute clearly applies to the facts. The statute was passed to protect children under the age of 14 and the injured party in this case was 5 years old. The Snoscoot also had protrusions, surfaces, or edges that at least one expert said were negligently designed and presented an unreasonable risk of personal injury.

Rather than let a jury decide these issues, the majority summarily decided the above factual disputes and concluded that this accident was not reasonably foreseeable. However, Yamaha's advertising brochure suggests use of the Snoscoot in backyards, and the machine was designed for children's use. Indeed, the accident occurred in a backyard amidst other normal winter recreational activities of children and family members. Additionally, Yamaha advertised in its brochure that the Snoscoot was made to start and handle easily. Starting and stopping a snowmobile is a normal occurrence as individuals stop to rest, observe, stretch, or talk to those around them while riding a snowmobile.

We have long held that a "breach of a statute gives rise to negligence per se if the persons harmed by that violation are within the intended protection of the statute and the harm suffered is of the type the legislation was intended to prevent."[3] The hazardous toy statute imposes a fixed duty of care; therefore, breach of the statute constitutes conclusive evidence of negligence. Trent Whiteford was one of the individuals this statute was intended to protect.

The majority also dismisses the applicability of Minn.Stat. § 325F.08 based on Trent Whiteford's failure to raise the statute as an issue at the trial court or court of appeals. However, Trent Whiteford's theories of the case included strict liability based on design

---

2. *See Lundgren,* 354 N.W.2d at 28.

3. *See Pacific Indem. Co. v. Thompson–Yaeger, Inc.,* 260 N.W.2d 548, 558 (Minn.1977).

defect and negligent design and manufacture of the Snoscoot. He also argued this statute in support of his position in his briefs to our court. This was appropriate because we have held that at the early pretrial stages of a case a party need not plead with particularity the theory of the case, but is entitled to have the case tried on any theory reasonably supported by the facts alleged in the complaint, regardless of whether such a theory is specifically labeled in the complaint.[4] There were sufficient facts set forth in the pleadings that "speak for themselves and no labeling * * * is essential to its validity nor need the legal conclusions to be drawn therefrom be stated."[5] Absent a grant of summary judgment, Trent Whiteford could have appropriately used the hazardous toy statute as one of his instructions to the jury and argued the hazardous toy statute at trial. Accordingly, his failure to specifically address the hazardous toy statute as a part of his already presented theory of the case does not preclude consideration of the statute by this court.

There is evidence supporting Trent Whiteford's theories of the case, including a breach of the hazardous toy statute. There is also evidence that the person harmed, a 5–year–old boy sliding near his brother on the same hill in the family's backyard, was within the class of persons the statute was intended to protect. In conclusion, this case should not be decided on whether or not the snowmobile was moving at the time of the accident. It should rather be decided under the factual record presented.

**4.** *Siats v. Western Union Tel. Co.*, 251 Minn. 412, 415–16, 88 N.W.2d 199, 202 (1958); *Wilson v. Ramacher*, 352 N.W.2d 389, 394–95 (Minn.1984).

**5.** *Siats*, 251 Minn. at 415, 88 N.W.2d at 202.