# STATE OF MINNESOTA
# IN COURT OF APPEALS
# A15-0713

Jane Doe 175, a minor,
by her mother and natural guardian, Mother Doe 175,
Appellant,

vs.

Columbia Heights School District, ISD No. 13,
Respondent,

Christopher Lloyd Warnke,
Defendant.

**Filed January 4, 2016**
**Affirmed**
**Hooten, Judge**

Anoka County District Court
File No. 02-CV-11-7667

Jeffrey R. Anderson, Sarah G. Odegaard, Jeff Anderson & Associates, P.A., St. Paul, Minnesota (for appellant)

Margaret A. Skelton, Christian R. Shafer, Ratwik, Roszak & Maloney, P.A., Minneapolis, Minnesota (for respondent)

Susan L. Naughton, League of Minnesota Cities and Association of Minnesota Counties, St. Paul, Minnesota (for amici curiae League of Minnesota Cities and Association of Minnesota Counties)

Paul D. Peterson, Lori L. Barton, Harper & Peterson, P.L.L.P., Woodbury, Minnesota (for amicus curiae Minnesota Association for Justice)

Michelle D. Kenney, Knutson, Flynn & Deans, P.A., Mendota Heights, Minnesota (for amicus curiae Minnesota School Boards Association)

        Considered and decided by Kirk, Presiding Judge; Chutich, Judge; and Hooten, Judge.

Under Minnesota Statutes section 466.03, subdivision 15 (2014), a school district is not vicariously liable for the torts of its employees committed while acting outside the "scope of office or employment," as that phrase is used in Minnesota Statutes section 3.736, subdivision 1 (2014), and defined in Minnesota Statutes section 3.732, subdivision 1(3) (2014).

## OPINION

**HOOTEN**, Judge

In this second appeal, appellant challenges the district court's summary judgment dismissal of her claims against respondent school district for vicarious liability, negligence, and negligent supervision arising out of the sexual abuse of appellant by respondent's employee. We affirm.

## FACTS

The material facts in this case are largely undisputed. In the fall of 2009, defendant Christopher Lloyd Warnke was an employee of respondent Columbia Heights School District, ISD No. 13, working as a football coach and weight room supervisor. Before hiring Warnke, the school district interviewed him, checked his references, and conducted a criminal background check on him. During the hiring process, the school district did not discover anything about Warnke that suggested he posed a risk to students.

When Warnke was hired by the school district in 2008, he received a copy of the school district's employee handbook, which contained policies regarding how employees should interact with students. The handbook referenced the Columbia Heights School

Board Policy Manual, which was available on the Internet. Policy #423 of the policy manual stated, "Sexual relationships between school district employees and students, without regard to the age of the student, are strictly forbidden and may subject the employee to criminal liability." The policy also prohibited employees from dating students, having sexual interactions with students, and committing or inducing students to commit immoral or illegal acts. The policy directed employees to "employ safeguards against improper relationships with students and/or claims of such improper relationships." Warnke testified that he knew during the fall of 2009 that the policy prohibited school district employees from dating or having sexual interactions with students.

In the fall of 2009, appellant Jane Doe 175 was fourteen years old and in the ninth grade in the Columbia Heights School District. Doe had first met Warnke when she was in the eighth grade and Warnke was coaching the eighth-grade football team. At that time, Doe was friends with football players on Warnke's team and would stop by and say hello to her friends at football games. Doe and Warnke got to know each other better at the start of her ninth-grade year, as she continued to visit her friends on the ninth-grade football team that Warnke then coached.

After a football game in the fall of 2009, Doe borrowed Warnke's cell phone to call her parents for a ride home. When she got home, she used the caller ID feature of her home telephone to acquire Warnke's cell phone number and proceeded to initiate correspondence with Warnke under a false identity. Doe used her personal cell phone to send Warnke text messages, pretending to be an adult woman interested in having a sexual relationship with him. After a week of exchanging text messages with Warnke, Doe admitted to him that

3

she was the person who was sending the text messages. Warnke was initially angry with Doe, but he soon resumed texting with her, even though he knew that she was a ninth-grade student. Over the following weeks, Warnke and Doe exchanged hundreds of text messages, many of which contained graphic sexual content. Warnke also e-mailed Doe two photographs of his penis.

During this time period, Warnke and Doe saw each other in person mainly in the weight room that Warnke supervised. Doe testified that, with the exception of one incident of sexual contact, her visits to the weight room to see Warnke were limited to conversation, although the subject matter of these conversations was at times sexually explicit. Doe testified that other people were nearly always in the weight room when Warnke and Doe interacted, but that there were no other school district employees present when she visited Warnke in the weight room. Warnke testified that he was alone with Doe in the weight room on only two occasions. Once when Warnke was alone with Doe in the weight room office, he either placed Doe's hand on his penis or coerced her to touch his penis.[1] After this incident of sexual contact, Warnke and Doe continued to exchange sexual text messages.

On November 17, 2009, another student's mother contacted Doe's mother and told her that Warnke and Doe had been exchanging sexually explicit text messages. On November 18, 2009, that student told a school official about Warnke's inappropriate

---

[1] While Doe and Warnke disputed whether Warnke placed Doe's hand on his penis or coerced her to touch his penis, this fact dispute did not affect the district court's analysis of the issues on summary judgment and does not affect our analysis.

4

relationship with Doe. The district court stated that "[i]t is undisputed that the first time any [other] employees of the [school district] knew about the relationship between Warnke and [Doe] was November 18, 2009." The school district called the police the same day to report Warnke's sexual abuse. Warnke was arrested, and his employment was terminated shortly thereafter. In 2011, Warnke pleaded guilty to one count of fourth-degree criminal sexual conduct and two counts of solicitation of a minor to engage in sexual conduct.

In October 2011, Doe filed a complaint against Warnke and the school district, alleging sexual battery against Warnke and vicarious liability, negligence, and negligent supervision against the school district. The school district moved for summary judgment on the three claims against it. In February 2013, the district court granted summary judgment to the school district on Doe's negligence and negligent supervision claims, but denied summary judgment on the vicarious liability claim. In March 2013, the district court certified two questions to this court, and the school district filed a notice of appeal to obtain answers to the certified questions, but this court dismissed the appeal on procedural grounds in January 2014. *Doe 175 by Doe 175 v. Columbia Heights Sch. Dist.*, 842 N.W.2d 38, 40–41, 49 (Minn. App. 2014).

In March 2014, the school district moved for summary judgment for a second time on the vicarious liability claim, raising for the first time an immunity defense. The district court granted summary judgment to the school district on Doe's vicarious liability claim. In this second appeal, Doe challenges the district court's grant of summary judgment to the school district on all three claims.

5

**ISSUES**

I.      Is the school district's mootness argument properly before this court?

II.     Did the district court err in granting the school district's motion for summary judgment on Doe's vicarious liability claim?

III.    Did the district court err in granting the school district's motion for summary judgment on Doe's negligence and negligent supervision claims?

**ANALYSIS**

**I.**

As a preliminary matter, the school district argues that Doe's vicarious liability claim is moot. Four months after the district court granted summary judgment to the school district on Doe's vicarious liability claim, but before Doe's current appeal to this court, Doe and Warnke stipulated that Doe's sexual battery claim against Warnke "shall be dismissed with prejudice." The district court dismissed the claim with prejudice by order dated October 31, 2014. On appeal, the school district argues for the first time that the October 2014 order renders moot Doe's vicarious liability claim. Specifically, the school district contends that its vicarious liability can be no greater than Warnke's direct liability and that the October 2014 order prevents Doe from establishing Warnke's direct liability.

The only issues appealed by Doe are whether the district court properly granted summary judgment to the school district on her vicarious liability, negligence, and negligent supervision claims. In response, the school district argues that the district court correctly granted summary judgment on Doe's vicarious liability claim on the basis of statutory immunity, but alternatively argues that we should not even review this summary

6

judgment on appeal because the claim is now moot in light of the subsequent stipulated dismissal of Doe's claim against Warnke. However, in order to reach the issue of whether Doe's vicarious liability claim is moot, we would necessarily be required to determine as a matter of law whether a stipulated dismissal with prejudice is the equivalent of a release, such that the common law rule that "the release of the agent releases the principal from vicarious liability" would apply in this case. *See Booth v. Gades*, 788 N.W.2d 701, 707 (Minn. 2010). The legal effect of the stipulated dismissal of Doe's claim against Warnke was not raised before the district court as an alternative ground for summary judgment and was not adequately briefed to this court. Rather, the only defense asserted by the school district in its second motion for summary judgment, ruled upon by the district court, and appealed by Doe relative to the school district's vicarious liability was statutory immunity. Therefore, we decline to consider the school district's mootness argument and proceed to the substance of the issues raised in this appeal.[2]

## II.

Doe argues that the district court erred by granting the school district's motion for summary judgment on her vicarious liability claim. She contends that the district court

---

[2] If we were to reverse the district court's grant of summary judgment on Doe's vicarious liability claim—which we are not doing—the school district would then have the opportunity to argue about the effect of the stipulated dismissal before the district court. But, because we are affirming on this issue, the school district's alternative argument (mootness) need not be addressed. Even if we were to agree that the vicarious liability claim is moot, a discretionary exception to the mootness doctrine would allow us to reach the merits of this issue. *See Dean v. City of Winona*, 868 N.W.2d 1, 6 (Minn. 2015) ("We have the discretion to consider a case that is technically moot when the case is functionally justiciable and presents an important question of statewide significance that should be decided immediately." (quotations omitted)).

erred in interpreting and applying the Minnesota municipal tort claims act, Minn. Stat. §§ 466.01–.15 (2014), and the Minnesota state tort claims act, Minn. Stat. § 3.736 (2014), to her claim. In its order granting the school district's second motion for summary judgment, the district court did not analyze whether the school district was subject to vicarious liability under Minn. Stat. § 466.02. Instead, the district court determined that the school district was immune from vicarious liability under Minn. Stat. § 466.03, subd. 15. We agree that even if the school district would otherwise be subject to vicarious liability under section 466.02, it would be immune from vicarious liability under section 466.03, subdivision 15.

On appeal from summary judgment, we review de novo whether there are any genuine issues of material fact and whether the district court erred in applying the law. *STAR Ctrs., Inc. v. Faegre & Benson, L.L.P.*, 644 N.W.2d 72, 76–77 (Minn. 2002). We view the evidence in the light most favorable to the nonmoving party. *Id.* Whether immunity applies is a question of law, which we review de novo. *Schroeder v. St. Louis Cty.*, 708 N.W.2d 497, 503 (Minn. 2006). "The party claiming statutory immunity has the burden of proof." *S.W. & J.W. ex rel. A.M.W. v. Spring Lake Park Sch. Dist. No. 16*, 580 N.W.2d 19, 22 (Minn. 1998).

The interpretation of a statute presents a question of law, which we review de novo. *Weston v. McWilliams & Assocs., Inc.*, 716 N.W.2d 634, 638 (Minn. 2006). "The object of all interpretation and construction of laws is to ascertain and effectuate the intention of the legislature." Minn. Stat. § 645.16 (2014). The interpretation of section 466.03, subdivision 15, is an issue of first impression. "The first step in statutory interpretation is

to determine whether the statute's language, on its face, is ambiguous." *Christianson v. Henke*, 831 N.W.2d 532, 536 (Minn. 2013) (quotations omitted).

> In determining whether a statute is ambiguous, we will construe the statute's words and phrases according to their plain and ordinary meaning. A statute is only ambiguous if its language is subject to more than one reasonable interpretation. Multiple parts of a statute may be read together so as to ascertain whether the statute is ambiguous. When we conclude that a statute is unambiguous, our role is to enforce the language of the statute and not explore the spirit or purpose of the law. Alternatively, if we conclude that the language in a statute is ambiguous, then we may consider the factors set forth by the [l]egislature for interpreting a statute.

*Id.* at 536–37 (quotations and citations omitted). The parties offer conflicting interpretations of the language of the statute at issue here. But, because there is only one *reasonable* interpretation—the school district's—we conclude that the statute's language is unambiguous.

Section 466.02 provides: "Subject to the limitations of sections 466.01 to 466.15, every municipality is subject to liability for its torts and those of its officers, employees and agents acting within the scope of their employment or duties whether arising out of a governmental or proprietary function." The term "municipality" includes school districts. Minn. Stat. § 466.01, subd. 1. But, the term "scope of their employment or duties" is not defined in the municipal tort claims act. Section 466.03 details numerous "limitations and exceptions" to municipal vicarious liability. *Hansen v. City of St. Paul*, 298 Minn. 205, 211, 214 N.W.2d 346, 350 (1974). In relevant part, this section provides that every municipality shall be immune from liability for "[a]ny claim against a municipality, if the

9

same claim would be excluded under [Minn. Stat. § 3.736], if brought against the state." Minn. Stat. § 466.03, subd. 15.

Section 3.736, subdivision 1, provides that, with some exceptions, the state can be held liable only for losses caused by the torts of its employees "while acting within the scope of office or employment." For purposes of section 3.736, "scope of office or employment" means "that the employee was acting on behalf of the state in the performance of duties or tasks lawfully assigned by competent authority." Minn. Stat. § 3.732, subd. 1(3). By limiting the state's vicarious liability to the torts of employees "acting within the scope of office or employment," section 3.736 plainly excludes from vicarious liability torts committed by a state employee who was *not* "acting on behalf of the state in the performance of duties or tasks lawfully assigned by competent authority." *See* Minn. Stat. § 645.19 (2014) (codifying the interpretive canon *expressio unius est exclusio alterius*). In addition to this implicit exclusion, the state tort claims act details numerous other exclusions from the state's vicarious liability, none of which are relevant here. *See* Minn. Stat. § 3.736, subd. 3.

There is no dispute that Warnke engaged in sexual misconduct for his own personal reasons, not "on behalf of" the school district "in the performance of duties or tasks lawfully assigned by competent authority." *See* Minn. Stat. § 3.732, subd. 1(3). Therefore, if Warnke had been employed by the state rather than the school district, Doe's vicarious liability claim would have been "excluded under section 3.736." *See* Minn. Stat. § 466.03, subd. 15. Thus, in its summary judgment ruling, the district court correctly concluded that the school district was immune from liability under section 466.03, subdivision 15.

Doe offers a different interpretation of the statute, but her interpretation is unreasonable. Doe claims that because section 466.03, subdivision 15, uses the word "excluded," it refers only to the "[e]xclusions" of section 3.736, subdivision 3. *See* Minn. Stat. § 466.03, subd. 15 ("Any claim against a municipality, if the same claim would be *excluded* under section 3.736, if brought against the state." (emphasis added)). Doe then points out that none of the enumerated exclusions in the state tort claims act provides for immunity for claims of child sexual abuse and therefore argues that section 466.03, subdivision 15, does not confer immunity upon the school district. Doe's interpretation is flawed because section 466.03, subdivision 15, provides immunity to a municipality if the state would be immune "under section 3.736"—*not* if the state would be immune "under section 3.736, subdivision 3." This court cannot "add words to the statute that the [l]egislature did not supply." *Graphic Commc'ns Local 1B Health & Welfare Fund "A" v. CVS Caremark Corp.*, 850 N.W.2d 682, 691 (Minn. 2014). And, section 3.736, subdivision 1, specifically provides that the state may be vicariously liable only for injury "caused by an act or omission of an employee of the state while acting within the scope of office or employment."

The school district persuasively argues that section 3.736, subdivision 1, creates a general rule that the state *is* immune from vicarious liability for the torts of its employees *unless* they were committed "within the scope of office or employment." Subdivision 3 expands this general rule by providing additional circumstances ("[e]xclusions") under which the state is immune, even if an employee's tort *was* committed "within the scope of office or employment." On the other hand, Doe's narrow, formalistic interpretation of

11

section 466.03, subdivision 15, ignores the general rule of immunity set forth in section 3.736, subdivision 1.

Based upon our interpretation of the interplay between the municipal tort claims act and the state tort claims act, we hold that the school district is immune from vicarious liability under Minn. Stat. § 466.03, subd. 15. The district court did not err in granting summary judgment to the school district on Doe's vicarious liability claim.

**III.**

Doe next argues that the district court erred by granting summary judgment to the school district on her negligence and negligent supervision claims because the existence of alleged "red flags" should have put the school district on notice that Warnke's sexual abuse of Doe was foreseeable. The school district counters that Doe mischaracterizes the record to exaggerate the significance of the alleged red flags and contends that Warnke's sexual abuse of Doe was not foreseeable. To defeat summary judgment, the nonmoving party must do more than "merely create[] a metaphysical doubt as to a factual issue" or "rest on mere averments." *DLH, Inc. v. Russ*, 566 N.W.2d 60, 71 (Minn. 1997). Rather, the nonmoving party must offer "substantial evidence" to support each essential element of its cause of action. *See id.* at 70–71 (quotation omitted). Speculation and innuendo are not sufficient. *Johnson v. Van Blaricom*, 480 N.W.2d 138, 140 (Minn. App. 1992).

The elements of a negligence claim are the existence of a duty of care, breach of that duty, proximate causation, and injury. *Bjerke v. Johnson*, 742 N.W.2d 660, 664 (Minn. 2007). For purposes of a negligence claim, there is no general duty to protect another from harm, but a duty to protect arises if there is a special relationship between the parties and

12

the risk is foreseeable. *Id.* at 665. Similarly, "[t]o make out a successful claim for negligent supervision, the plaintiff must prove (1) the employee's conduct was foreseeable; and (2) the employer failed to exercise ordinary care when supervising the employee." *C.B. by L.B. v. Evangelical Lutheran Church in Am.*, 726 N.W.2d 127, 136 (Minn. App. 2007) (quotations omitted). Therefore, to succeed on a claim of either negligence or negligent supervision, a plaintiff must prove that the risk in question was foreseeable.

Whether a risk is foreseeable is a legal question that must be decided by the district court before submitting a case to a jury. *Alholm v. Wilt*, 394 N.W.2d 488, 491 (Minn. 1986). In the context of negligence and negligent supervision claims, foreseeability means "a level of probability which would lead a prudent person to take effective precautions." *Fahrendorff by Fahrendorff v. N. Homes, Inc.*, 597 N.W.2d 905, 912 (Minn. 1999) (quotation omitted). "In determining whether a danger is foreseeable, courts look at whether the specific danger was objectively reasonable to expect, not simply whether it was within the realm of any conceivable possibility." *Whiteford by Whiteford v. Yamaha Motor Corp., U.S.A.*, 582 N.W.2d 916, 918 (Minn. 1998). Sexual abuse "will rarely be deemed foreseeable in the absence of prior similar incidents." *K.L. v. Riverside Med. Ctr.*, 524 N.W.2d 300, 302 (Minn. App. 1994), *review denied* (Minn. Feb. 3, 1995).

The district court granted the school district's motion for summary judgment on these claims because it concluded that Warnke's sexual abuse of Doe was not foreseeable. The district court relied heavily on *P.L. v. Aubert*, 545 N.W.2d 666 (Minn. 1996), in reaching this conclusion. In *P.L.*, the supreme court held that the sexual abuse of a student by a teacher did not impose liability on the school district because the teacher and student

concealed their relationship, such that "closer vigilance would not have uncovered the relationship." *Id.* at 668. Doe argues that the existence of the following red flags is sufficient, when construed most favorably to her, to raise a genuine issue of material fact as to whether Warnke's sexual abuse of Doe was foreseeable and whether the school district had reason to know that Warnke posed a danger to Doe.

**Doe yelling at Warnke at a football practice**

Doe watched Warnke's football practice during the fall of 2009 on one or two occasions. On one of these occasions, Doe yelled to Warnke, "Chris, I love you." In response to Doe yelling this, L.S., another football coach, told Warnke, "[T]hat's trouble." Warnke did not respond to Doe, and L.S. asked Doe to leave the practice.

**Doe and Warnke talking in a school parking lot**

In late September or early October 2009, L.S. saw Warnke and Doe talking in a school parking lot after football practice. Several other students and coaches were in the parking lot at the time. In her appellate brief, Doe states that the conversation took place while she and Warnke were "alone" in the parking lot, but this mischaracterizes the record. L.S. testified that "[t]hey weren't alone. They were talking to each other, but there [were] lots of people in the parking lot." L.S. further testified that he did not find it odd to see Doe and Warnke talking in the parking lot, as "it wasn't uncommon for coaches, male or female, to be talking to students."

**Doe using the weight room office computer**

Sometime in the fall of 2009, L.S. and another football coach saw Doe using a computer in the weight room office while Warnke was supervising the weight room.

14

Warnke was not in the office at the time, as he was lifting weights with football players in the weight room. L.S. or the other coach said to Warnke something like, "[S]he needs to leave," to which Warnke responded, "She's not my problem." L.S. testified that, while he had seen Doe in the weight room from time to time, he did not recall ever seeing Doe interacting with Warnke in the weight room. L.S. indicated that both female and male athletes used the weight room. Doe testified that she was an athlete and that she often visited the weight room with her brother, who was on the junior varsity football team. L.S. testified that the weight room office, which was located near the entryway of the weight room, was shared by several coaches who supervised the weight room. When asked about the weight room office, Doe stated: "It's just open. Anybody [could] go in there." Doe testified that she had accessed the computer "probably a couple of times" using her student login. L.S. testified that he was unaware of any policies related to students using the computer in the weight room office.

**Warnke alone in the weight room with a young girl on a Saturday**

Another weight room supervisor saw Warnke alone with an unknown "young girl" in the weight room on a Saturday morning when Warnke was supervising the weight room. The weight room supervisor did not report this observation to school officials until the school district conducted its internal investigation of Warnke's sexual abuse. When asked about this incident, Warnke testified that he had never been confronted about being alone in the weight room with a young girl. He also testified that his daughter would occasionally accompany him to the weight room on Saturdays when his wife was working.

15

Even viewing the record in the light most favorable to Doe, these alleged red flags were insufficient to raise a genuine issue of material fact as to whether Warnke's sexual abuse of Doe was foreseeable. Taken in context, the incidents Doe cites are not sufficiently similar to or indicative of sexual abuse as to give the school district notice that an inappropriate relationship existed between Warnke and Doe. First, Doe's "Chris, I love you" shout was a single statement by a teenage girl at a football practice, Warnke did not react to the shout, and Doe was instructed to leave the practice after she shouted. Second, as to the observation of Doe talking to Warnke in the school parking lot, the record indicates that Doe and Warnke were *not* alone and that it was common to see coaches talking with students in the parking lot after sports practices. Third, the observation of Doe using a computer in the weight room office while Warnke was supervising other students in the weight room is not an objectively reasonable indicator of a potentially inappropriate relationship between Warnke and Doe. Fourth, observations of Warnke and an unidentified young female alone in the weight room on a Saturday do not raise any reasonable inferences of potential or ongoing sexual abuse. Furthermore, there is no evidence that any school district employee observed physical contact or sexual conduct of any kind between Warnke and Doe.

Doe alternatively argues that foreseeability in this case is a "close call," presenting a jury question. *See Whiteford*, 582 N.W.2d at 918 ("In close cases, the question of foreseeability is for the jury."). Even viewing the evidence in the light most favorable to Doe, however, these incidents gave no "objectively reasonable" indication of a "specific

16

danger" of potential or ongoing sexual abuse. *Id.* Our review of these facts shows that foreseeability was not a "close call" that should be decided by a jury.

Doe contends that inadequate training by the school district might be the reason why the school district's employees failed to discern the significance of the alleged red flags. But, Doe does not identify any additional training that would have caused school district employees to view the benign interactions she characterizes as red flags as indicators of possible sexual abuse. The mere assertion that additional training might have affected observers' perceptions is not sufficient to defeat summary judgment. *See DLH, Inc.*, 566 N.W.2d at 70–71 (requiring substantial evidence and not mere averments to defeat summary judgment).

Based on the undisputed facts in the record, we agree with the district court that Warnke's sexual abuse of Doe was not foreseeable. The district court did not err in granting summary judgment to the school district on Doe's negligence and negligent supervision claims.

## DECISION

Because the school district is immune from vicarious liability under the municipal tort claims act, we affirm the district court's grant of summary judgment to the school district on Doe's vicarious liability claim. And, because Warnke's sexual abuse of Doe was not foreseeable, we affirm the district court's grant of summary judgment to the school district on Doe's negligence and negligent supervision claims.

**Affirmed.**