*This opinion will be unpublished and
may not be cited except as provided by
Minn. Stat. § 480A.08, subd. 3 (2016).*

**STATE OF MINNESOTA
IN COURT OF APPEALS
A16-0465**

Jane Doe, et al.,
Appellants,

vs.

Kmart Corporation, et al.,
Respondents.

**Filed February 6, 2017
Affirmed
Bratvold, Judge**

Kandiyohi County District Court
File No. 34-CV-14-474

John R. Neve, Evan H. Weiner, Neve Webb, PLLC, Minneapolis, Minnesota (for appellant)

Timothy J. Leer, Christopher Angell, O'Meara, Leer, Wagner & Kohl, P.A., Minneapolis, Minnesota (for respondents)

Considered and decided by Stauber, Presiding Judge; Worke, Judge; and Bratvold, Judge.

## UNPUBLISHED OPINION

**BRATVOLD**, Judge

Respondent pharmacy and respondent-employee, a pharmacy technician, disclosed information about appellant-husband's Viagra prescription to his estranged wife, G.Z., while appellant-husband and G.Z. were in the process of dissolving their marriage. G.Z.,

who is not a party to this appeal, later repeated the disclosed information and made derogatory remarks to others about appellant-husband and appellant-wife, who was then his girlfriend. After the dissolution was finalized, appellant-husband married appellant-wife. Appellants sued respondents and alleged invasion of privacy (public disclosure of private facts), negligence, professional negligence, and breach of contract. Their alleged damages included emotional distress, loss of reputation, and economic loss. Because appellants failed to establish that respondents published the information to the public at large, and because they seek damages that are not recoverable in negligence or breach of contract, we affirm the district court's grant of summary judgment.

## FACTS

Appellant John Doe and G.Z. married in 1989. G.Z. is a registered pharmacist and the owner of a pharmacy in the couple's hometown, where she has worked since 1991. In spring 2009, John Doe began to use Viagra[1] and filled his prescription at respondent Kmart's pharmacy near the couple's cabin, rather than at G.Z.'s pharmacy. G.Z. knew that John Doe used Viagra, but he was careful to keep his prescription discreet. He paid for the prescription in cash, did not keep receipts, and burned the empty bottles. He kept two bottles of Viagra—one at the marital home and one in his truck.

In fall 2009, John Doe met appellant Jane Doe and, some months later, they began a romantic relationship. In February 2010, John Doe told G.Z. that he wanted a divorce. In

---

[1] Viagra is a prescription medication used to treat erectile dysfunction. Typically, a patient takes one dose of the drug an hour before he plans to have intercourse.

2

June 2010, John Doe served G.Z. with a dissolution petition and they separated. G.Z. testified that she was aware of John Doe's sexual relationship with Jane Doe in July 2010.

On January 12, 2011, G.Z.'s divorce attorney sent a written request to John Doe's attorney, asking for records of his 2010 prescription expenses. The letter stated the exact dollar amount John Doe had spent on his Viagra prescription in 2010. John Doe then called the Kmart pharmacy and spoke to respondent T.D., a pharmacy technician, and asked if Kmart had given G.Z. his prescription information. According to John Doe, T.D. paused and said, "I'm sorry, yes, I did, we shouldn't have done that." According to the Does, T.D.'s disclosure of the amount of Viagra that John Doe had purchased led G.Z. to infer the frequency of his sexual activity outside the marriage.

A few days after John Doe spoke with T.D., G.Z. and John Doe participated in mediation concerning their marital dissolution. According to John Doe, the dissolution proceedings had been amicable, but became hostile at the mediation and the settlement "wasn't even remotely close" to what he had expected. John Doe testified that he expected in the property division to be awarded both the cabin, which was valued at $535,000, and a monetary award representing a share of G.Z.'s pharmacy business, which was valued at $3 million, but that under the settlement he received neither. John Doe admitted that he and G.Z. were separately represented in their divorce and that he voluntarily agreed to the settlement. The divorce was finalized in May 2011; John and Jane Doe married in August 2012.

At some point after the divorce was finalized, G.Z. began harassing the Does, sometimes verbally, but also by text, e-mail, and on social media. G.Z. admitted she told

"multiple people" that John Doe uses Viagra. G.Z. also admitted making "very many comments on Facebook," including calling Jane Doe "cheap," a "skanky adulterous ho," "Skankerella," and "Skankenstein, . . . the one sexual predator nobody warns you about." G.Z. also posted "something to the effect" that John Doe was "building a big new house to make up for obvious inadequacies elsewhere." G.Z. also made comments on Jane Doe's business webpage about Jane Doe's affair with John Doe. Jane Doe testified that the social media posts caused her friends to believe John Doe needed erectile dysfunction medication.

Jane Doe also testified that G.Z. threatened her, saying there were "consequences to [her] actions." In November 2013, Jane Doe petitioned for a harassment restraining order (HRO) against G.Z. The petition was granted. After the HRO was issued, Jane Doe testified that the stalking became "more vague" but did not stop.

On July 9, 2014, the Does initiated this lawsuit against respondents Kmart and T.D. alleging invasion of privacy (publication of private facts); negligence and professional negligence; and breach of contract. During discovery, John Doe alleged economic loss due to his divorce settlement. He also testified to emotional-distress damages including sleeplessness, stress, and humiliation. John Doe never saw a medical doctor or psychologist in connection with these symptoms, although he did obtain a prescription for a sleeping pill.

Jane Doe's damages include losses to her business and emotional distress. She testified that "[I]t's difficult to even go to Walmart in a small town to get something and everybody's looking you up and down thinking, oh, you're a ho and a skank." She also

4

testified that she has developed temporomandibular joint dysfunction (TMJ), headaches, and sleep difficulties.

Respondents moved for summary judgment, arguing that the disclosure was not the legal cause of the Does' damages, that the disclosure did not constitute publication, and that the Does did not present sufficient evidence of compensable damages. To support their damages claims, the Does relied on their own deposition testimony about the economic loss at the divorce settlement and their emotional damages, a pharmacist's affidavit, and a letter from a chiropractor, who stated that "stress can induce jaw pain," and that "living in a rural community and dealing with an event such as an HRO can lead to TMJ." The letter makes no reference to Jane Doe. Jane Doe also offered a chiropractor's letter referring her to treatment for TMJ.

After a hearing, the district court granted summary judgment and dismissed all claims. The Does appeal.

## DECISION

Summary judgment is appropriate where the record presents "no genuine issue as to any material fact" and the moving party is "entitled to judgment as a matter of law." Minn. R. Civ. P. 56.03. The nonmoving party "cannot defeat a summary judgment motion with unverified and conclusory allegations or by postulating evidence that might be developed at trial." *Funchess v. Cecil Newman Corp.*, 632 N.W.2d 666, 672 (Minn. 2001) (citation omitted). "To defeat summary judgment, the nonmoving party must do more than merely create a metaphysical doubt as to a factual issue or rest on mere averments." *Doe 175 v. Columbia Heights Sch. Dist.*, 873 N.W.2d 352, 359 (Minn. App. 2016) (quotations

omitted). Instead, the nonmoving party must produce "substantial evidence" to support the essential elements of its cause of action. *DLH, Inc. v. Russ*, 566 N.W.2d 60, 70-71 (Minn. 1997). "Speculation and innuendo" are insufficient. *Doe 175*, 873 N.W.2d at 359; *Johnson v. Van Blaricom*, 480 N.W.2d 138, 140 (Minn. App. 1992).

"We review a district court's grant of summary judgment de novo to determine whether any genuine issue of material fact exists and whether the district court erred in applying the law." *Larson v. Nw. Mut. Life Ins. Co.*, 855 N.W.2d 293, 299 (Minn. 2014) (citation omitted). On appeal, we "view the evidence in the light most favorable to the party against whom summary judgment was granted." *Lee v. Fresenius Medical Care, Inc.*, 741 N.W.2d 117, 122 (Minn. 2007). "[W]e need not adopt the reasoning of the district court," and "may affirm a grant of summary judgment if it can be sustained on any grounds." *Doe v. Archdiocese of St. Paul*, 817 N.W.2d 150, 163 (Minn. 2012).

## I.     Publication of Private Facts

Publication of private facts "is an invasion of privacy when one 'gives publicity to a matter concerning the private life of another . . . if the matter publicized is of a kind that (a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.'" *Lake v. Wal-Mart Stores, Inc.*, 582 N.W.2d 231, 233 (Minn. 1998). In *Bodah v. Lakeville Motor Express, Inc.*, the supreme court clarified the definition of "publicity" by holding that publicity means that "the matter is made public, by communicating it to the public at large, or to so many persons that the matter must be

6

regarded as substantially certain to become one of public knowledge." 663 N.W.2d 550, 557 (Minn. 2003) (citing Restatement (Second) of Torts § 652D cmt. a).[2]

Here, the district court dismissed the Does' invasion of privacy claim because it was undisputed that respondents did not publish any private facts to the "public at large," as required by *Bodah*. The district court also determined that there was no evidence that respondents shared John Doe's prescription information with any person other than G.Z. The Does argue that under *Bodah*, the publication element is satisfied where "the matter" is communicated to "so many persons" that it is "substantially certain to become one of public knowledge." Because respondents disclosed private facts to G.Z., who in turn published comments on social media, the Does contend that the publication element is satisfied.

The Does' argument does not withstand careful review for two reasons. First, respondents disclosed private information only to G.Z., who is not "the public at large." This court has previously held that disclosure to one person does not establish a claim for this privacy tort. *See Robins v. Conseco Fin. Loan Co.*, 656 N.W.2d 241, 245 (Minn. App. 2003) (affirming summary judgment where plaintiff proved defendant disseminated private information "only to one fellow employee"). The Does cite no binding legal authority, and we are aware of none, establishing that respondents are liable for the additional dissemination of private facts by another.

---

[2] As noted in *Bodah*, this definition of publicity is substantially different from the definition of "publication" used as an element of defamation, which is actionable upon communication to a single third person. 663 N.W.2d at 554.

7

Second, even if respondents are somehow liable for G.Z.'s dissemination, the Does offered only innuendo and generalization to prove the scope of G.Z.'s dissemination. No specific evidence showed that G.Z.'s dissemination was communicated to "so many persons" that it was "substantially certain" to become "public knowledge." In fact, no record evidence established to whom G.Z. disseminated her statements. The fact that some statements were posted on social media is not sufficient without evidence about the level of privacy on the relevant accounts or to how many people the statements were disseminated. The scope of dissemination is crucial, as seen in *Bodah*, which held that an employer's dissemination of 204 employee social security numbers to 16 managers in six states "does not constitute publication." *Id*. at 557.

Alternatively, the Does argue that this court should adopt an exception that allows application of the "particular public" standard for publicity, which would include disclosure to smaller audiences "whose knowledge of those facts would be embarrassing to the plaintiff." "The "particular public" standard is recognized by Michigan, Indiana, Illinois, and Iowa. *See, e.g.*, *Hill v. MCI Worldcom Communs., Inc.*, 141 F. Supp. 2d 1205, 1213 (S.D. Iowa 2013); *Chisolm v. Foothill Capital Corp.*, 3 F. Supp. 2d 925, 940 (N.D. Ill. 1998); *Beaumont v. Brown*, 257 N.W.2d 522, 523 (Mich. 1977); *Walgreen Co. v. Hinchy*, 21 N.E.3d 99, 103 (Ind. Ct. App. 2014).

While the "particular public" standard appears to fit the Does' theory of dissemination of private facts in a small town, the Minnesota Supreme Court explicitly rejected this standard in *Bodah*. 663 N.W.2d at 556 ("We also reject the 'special relationship' or 'particular public' approach taken by some jurisdictions."). The Does

8

essentially ask this court to overrule *Bodah*, but that is not the province of this court. *See State v. Ward*, 580 N.W.2d 67, 74 (Minn. App. 1998) ("[W]e are not in position to overturn established supreme court precedent.") (citations omitted).

Because the Does' evidence established that respondents disclosed private facts to only one individual, the Does have not satisfied the "publicity" element of this privacy tort. Accordingly, we affirm summary judgment on this claim.[3]

## II.     Negligence Claims

The Does alleged general and professional negligence.[4] "A defendant in a negligence suit is entitled to summary judgment when the record reflects a complete lack of proof on any of the four essential elements of the negligence claim: (1) the existence of a duty of care, (2) a breach of that duty, (3) an injury, and (4) the breach of the duty being

---

[3] We do not reach respondents' alternative argument that the Does' privacy claim was untimely under the applicable statute of limitations.

[4] The Does specifically alleged negligent training, supervision, and retention in their complaint, but do not raise dismissal of these theories in their briefs. We conclude that the Does have forfeited appellate review of these theories. *Clark v. Peterson*, 741 N.W.2d 136, 139n.1 (Minn. App. 2007). Additionally, "Minnesota law does not recognize a cause of action for negligent training." *Eischen v. Crystal Valley Coop*, 835 N.W.2d 629, 634 (Minn. App. 2013), *review denied* (Minn. Oct. 15, 2013). Thus summary judgment was proper on the negligent-training claim. For negligent supervision and retention claims, we note that an employer has a duty to "refrain from retaining employees with known dangerous proclivities." *Yunker v. Honeywell, Inc.*, 496 N.W.2d 419, 423-24 (Minn. App. 1993), *review denied* (Minn. Apr. 29, 1993). An employer may be held liable if "the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness and . . . fails to take further action." *Olson v. First Church of Nazarene*, 661 N.W.2d 254, 264 (Minn. App. 2003) (quotations and citations omitted). No evidence of T.D.'s past conduct was offered to support a negligent supervision or retention claim. Thus summary judgment was proper on the negligent supervision and retention theories.

the proximate cause of the injury." *Funchess*, 632 N.W.2d at 672. Respondents concede, for the purposes of summary judgment, that duty and breach have been established.

The district court granted summary judgment on the basis of proximate causation, because respondents' disclosure to G.Z. did not proximately cause any of the damages suffered by the Does, G.Z.'s reaction was "so extreme as to be completely unforeseeable," and the "multitude of circumstances" that upset G.Z. "forecloses any possibility of a finding of legal causation." The Does argue that causation is a disputed fact question that should be decided by the jury. Proximate cause "is a fact question which ordinarily must be left to the jury." *Pluwak v. Lindberg*, 268 Minn. 524, 528-29, 130 N.W.2d 134, 138 (1964). "[I]t is only where different minds can reasonably arrive at only one result that fact issues become questions of law." *Id.* at 529, 130 N.W.2d at 138. While we may agree with the district court that the causation alleged here is attenuated, we do not reach this issue because the Does' failure to seek compensable damages disposes of their negligence claims on alternative grounds.

The Does admit they sustained no physical injuries and instead have sought damages for emotional distress with physical manifestations of TMJ, headaches, and sleep problems, reputation damages, and economic loss. Respondents contend that summary judgment is appropriate because, under Minnesota law, the Does have not experienced sufficient physical manifestations of emotional distress, no admissible medical testimony supports Jane Doe's claim for TMJ damages, Minnesota does not recognize reputation damages for a negligence claim, and the Does' evidence of economic loss asks a jury to speculate. We will address each alleged damage in turn.

10

Courts have historically limited liability for emotional-distress claims out of concern for the reliability of these claims. *Carlson v. Ill. Farmers Ins. Co.*, 520 N.W.2d 534, 535 (Minn. App. 1994). In a negligence action not involving direct physical injury, a plaintiff may recover damages for emotional distress only if the plaintiff was either "within the zone of danger" or if the plaintiff "exhibit[ed] physical manifestations of emotional distress." *Id*. at 536; *see also Lickteig v. Alderson, Ondov, Leonard, & Sween*, 556 N.W.2d 557, 560 (Minn. 1990) (holding Minnesota allows recovery of emotional-distress damages in a tort case only "in limited circumstances").[5] The Does claim their emotional distress has resulted in physical manifestations.

John Doe testified that he has suffered stress, has trouble sleeping, and takes sleep medication. Jane Doe testified that she also has trouble sleeping, and has headaches. These symptoms do not satisfy the physical-manifestations test. *See Leaon v. Washington Cty.*, 397 N.W.2d 867, 875 (Minn. 1986) (affirming district court's decision to deny motion to amend to add emotional-distress claim where symptoms alleged were weight loss, depression and negative feelings); *see also Elstrom v. Ind. Sch. Dist. No. 270*, 533 N.W.2d 51, 57 (Minn. App. 1995) (insomnia not sufficiently severe for intentional infliction of emotional distress), *review denied* (Minn. July 27, 1995); *Stubbs v. North Memorial Med. Ctr.*, 448 N.W.2d 78, 81 (Minn. App. 1989) (affirming summary judgment, in part, because

---

[5] *Lickteig* notes the same two limited circumstances raised in *Carlson*; additionally, *Lickteig* notes that a plaintiff may recover emotional distress damages for wilful, wanton, or malicious conduct that results in a direct invasion of a plaintiff's rights. 556 N.W.2d at 560. Because the Does did not allege that respondents' conduct was wilful, wanton, or malicious, we do not discuss this aspect of our caselaw.

11

headaches and sleeplessness are not sufficiently severe), *review denied* (Minn. Jan. 10, 1990).

Assuming that Jane Doe's TMJ is a physical manifestation sufficient to support emotional-distress damages, the Does failed to offer admissible or sufficient evidence of these damages at summary judgment. They submitted a pharmacist's affidavit, which described breach and duty, but offered no specific facts about Jane Doe or her TMJ.[6] Additionally, the Does submitted a letter from a chiropractor, which described the relationship between stress and TMJ, but included no facts about Jane Doe. Neither the pharmacist nor the chiropractor stated that they have personal knowledge of Jane Doe or her TMJ.

The pharmacist's affidavit and the chiropractor's letter lack foundation and are insufficient to satisfy the Does' burden at summary judgment. Minn. R. Civ. P. 56.05 (requiring affidavits on personal knowledge in response to summary judgment); *Benson v. N. Gopher Enters., Inc.*, 455 N.W.2d 444, 446 (Minn. 1990) (affirming summary judgment based on district court's determination that plaintiff's expert testimony lacked foundation). The only remaining evidence of Jane Doe's TMJ is her own testimony, which is not sufficient to establish that her TMJ is a physical manifestation of emotional distress. *State by Woyke v. Tonka Corp.*, 420 N.W.2d 624, 627 (Minn. App. 1988) (holding plaintiff is

---

[6] In fact, the pharmacist's affidavit exclusively relied on his review of the Does' complaint and, in discussing his opinions, repeatedly stated "[i]f the allegations contained in the Complaint are proven to be true."

not entitled to damages for emotional distress in the absence of medical evidence), *review denied* (Minn. May 4, 1988).

The Does also seek reputation damages and argue that these damages are compensable under negligence based on *Gillespie v. Klun*, in which we upheld a jury award for damage to plaintiffs' reputation and credit rating resulting from legal malpractice in a real-estate transaction. 406 N.W.2d 547, 558 (Minn. App. 1987), *review denied* (Minn. July 9, 1987). Even assuming *Gillespie* stands for this premise, the Does offered nothing other than their own unsubstantiated statements to establish damage to their reputation. In *Gillespie*, the record established a good credit rating and business reputation before the transaction, which led to "financial disaster," loss of "life savings," and outstanding debt after the transaction. *Id.* at 557-58. The Does offered no evidence of their reputations before or after respondents' disclosure. These damages therefore do not survive summary judgment. *See also Navarre v. S. Washington Cty. Sch.*, 652 N.W.2d 9, 31 (Minn. 2002) (holding unsubstantiated statements by plaintiff are legally insufficient to support reputation damages).

Finally, the Does have alleged economic loss. The Does submitted John Doe's testimony that he settled his divorce for less than what he had hoped for and Jane Doe's testimony of unspecified business loss. They presented no evidence of previous settlement agreements, business profits or losses, and no expert testimony related to their economic loss. At the summary-judgment stage, a plaintiff must produce enough evidence to show there is a genuine issue of economic damages. *Doe 175*, 873 N.W.2d at 359. Speculative, or conjectural damages are not recoverable. *Anderson v. Benson*, 394 N.W.2d 171, 175

13

(Minn. Ct. App. 1986); *see also Sievert v. First Nat'l Bank in Lakefield*, 358 N.W.2d 409, 415 (Minn. App. 1984) (rejecting unsubstantiated testimony about economic loss as inadequate to support damages), *review denied* (Minn. Feb. 5, 1985).

Because we conclude that the Does did not present sufficient evidence of damages that are compensable under tort law, we affirm the district court's dismissal of their negligence claims.

## III.   Breach of Contract

The district court granted summary judgment on the breach of contract claim on the basis that there was no consideration for the contract, and that the Does could not recover consequential damages, contractual damages, or extra-contractual damages from the breach. Because respondents concede that there was a contract, we do not address that issue and instead turn to damages.

"[D]amages recoverable in contract actions are those arising naturally from the breach or those which can reasonably be supposed to have been contemplated by the parties when making the contract as the probable result of that breach." *Lassen v. First Bank Eden Prairie*, 514 N.W.2d 831, 838 (Minn. App. 1994), *review denied* (Minn. June 29, 1994). To be recoverable, the damages must therefore have either been contemplated by the parties at the time or "so likely to result from breach that they can reasonably be said to have been foreseen." *Id.* (citing *Franklin Mfg. Co. v. Union Pac. R.R.*, 311 Minn. 296, 298-99, 248 N.W.2d 324, 325 (1976)). This determination is usually a question of fact. *Id.*

Here, the Does seek consequential damages from the alleged breach of contract. But reputation and emotional-distress damages are not compensable in breach of contract

14

unless the claim is accompanied by an independent tort. *See Lickteig*, 556 N.W.2d at 561 (holding that for emotional distress damages to be recoverable under contract theory, the contract claim must be accompanied by a wilful tort). Here, no tort has survived summary judgment.

Accordingly, we affirm the district court's grant of summary judgment because the Does failed to show compensable damages.

**Affirmed.**